IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case No. CV05-213-N-EJL |
| | ) |
| vs. | ) MEMORANDUM ORDER |
| | ) |
| RON and MARY PARK, husband and wife, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Pending before the Court in the above-entitled matter are Plaintiff's motion for summary judgment and Defendants' motion for summary judgment. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. Local Rule 7.1(d)(2).

### Factual and Procedural Background

Plaintiff, United States of America, filed this action seeking to enforce a recorded scenic easement held by the United States Forest Service on property held by Defendants Ronald and Mary Park which overlooks the Middle Fork of the Clearwater River. The easement was obtained in 1973. The Parks subsequently purchased a portion of the land subject to the easement in 1989. The instant suit alleges the Parks' operation of a dog kennel and training business on the land is a violation of the easement provisions. As such, the United States seeks a declaratory judgment, injunctive relief, and damages. The Parks maintain that their use of the land is in accord with the easement.

**Standard of Law**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

---

[1] See also, Rule 56(e) which provides, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

## Discussion

The dispute here centers on the interpretation of the easement language as applied to the Parks' use of the land and whether that use violates the terms of the easement.  The United States argues that the kennel construction and operation violate the easement because the Parks' failed to obtain prior written approval for such construction and the easement prohibits commercial operations outside the residence.  The Parks maintain their use of the land is not in violation of the easement asserting the construction of the kennels was not a new construction but an improvement of existing structures and that their operation is not a commercial activity but livestock farming which is allowed under the terms of the easement.

The easement was acquired by the United States from the previous owners of the property at issue for an amount of $49,500 in March of 1973.  Clause 2 provides restrictions on land use by the grantors and states in relevant part:

> a.  The lands within the easement area shall not be used for any professional or commercial activities except such as can be and are, in fact, conducted from a residential dwelling without outside alteration of the dwelling.
>
> ...
>
> c.  The Grantors, their heirs and assigns, retain the right to use the easement area for general crop and livestock farming and for limited residential development consistent with applicable State and local regulations.
>
> d.  That buildings, utility pole lines, and structures may be constructed, erected, or moved onto said lands only for farm or single-family residential purposes.  New or additional structures shall be subject to the following requirements:

(1) The location and architectural design of such structures shall be harmonious with the landscape and general surroundings.  Architectural and site plans must be approved in writing by the Secretary of Agriculture or his duly authorized representative prior to construction, erection, or placement of new or additional structures.

e. There is specifically retained by the Grantors, their heirs and assigns, the right to perform ordinary maintenance on all existing roads, structures and buildings, together with the right to replace, rebuild, or substitute any road, building or structure now existing with similar roads, buildings or structures in substantially the same location.

....

(Dkt. No. 16, Att. A).  The questions presented here are whether the construction of the kennels was consistent with the requirements of Clauses 2(d) and (e) and whether the kennel operation qualifies as a "commercial activity" and/or "livestock farming"as stated in Clauses 2(a) and (c).

I.    Construction of the Kennels:

Clause 2(d)(1) requires that the construction of new or additional structures on the easement land must be approved in writing.  The United States argues the Parks' knew of this requirement and failed to obtain such approval for the construction of the nineteen dog kennels located on their land.  In response the Parks maintain that the Clause 2(e) affords them the right to replace, substitute, or rebuild any structures in existence when the easement took effect in 1973.  The Parks argue they have operated their kennel facility since the beginning of their occupancy of the land and later expanded the operation to replace horse-related activities and that the kennels were constructed in areas that previously had kennels and/or other structures.  In addition, the Parks note that they obtained permission for the construction of additional buildings.  The United States strongly disputes the Parks' representation of the structures existing on the land and the approval for the construction of dog kennels.

As the United States recognizes, the construction of the kennels raises factual issues which the parties clearly dispute.  Therefore, this issue cannot be decided on these motions for summary judgment.

II.    Commercial Activities:

Clause 2(a) of the easement prohibits commercial activities upon the land which are conducted outside of the residential dwelling.  The United States contends that Parks' kennel

business is a commercial activity violating Clause 2(a).  The Parks maintain their dog kennel and training operation falls under Clause 2(c) which allows them to use the property for general crop and livestock farming.  Both parties dispute whether dogs qualify as "livestock" as the term is used in the easement.

The Parks argue the Court should apply a broad definition of "general crop and livestock farming" so as to include dogs, as domestic animals, within the terms of the easement.  The United States does not dispute that dogs are "domestic animals" but does dispute that dogs are livestock; asserting the fact that they are domestic does not also make them livestock.  In addition, the United States points to the Idaho Code sections referencing livestock which it argues evidences that dogs do not fall within the definition of livestock.  In particular, the United States notes Idaho Code § 25-2806 which establishes liability upon a dog owner who's dog kills or wounds any livestock or poultry.[2]  The Parks dispute the applicability of the Idaho Code sections arguing they are limited to the particular statutory scheme for which they were enacted.

The parties do not dispute the easement exists nor that there exist multiple dog kennels on the land and that the Parks are engaged in a business of breeding, kenneling, and boarding dogs.  Thus, the question of whether the Parks' dog business is "livestock farming" or a "commercial activity" turns on the interpretation of the easement terms.

"The legal effect of an unambiguous written document must be decided by the trial court as a question of law.  If, however, the instrument of conveyance is ambiguous, interpretation of the instrument is a matter of fact for the trier of fact."  Benninger v. Derifield, 129 P.3d 1235, 1238 (Idaho 2006) (citation omitted).  "In interpreting and construing deeds of conveyance, the primary goal is to seek and give effect to the real intention of the parties."  Id. (citing Neider v. Shaw, 65 P.3d 525 (Idaho 2003); C & G, Inc. v. Rule, 25 P.3d 76 (Idaho 2001)).  "If the language of a deed is plain and unambiguous, the intention of the parties must be ascertained from the deed itself and extrinsic evidence is not admissible. Uncertainties should be treated as ambiguities; such ambiguities

---

[2] The Government also cites to Idaho Code § 25-1101 and chapters 2, 3, 17, and 25 of Title 25 of the Idaho Code which are laws concerning livestock; the Government notes these sections do not include dogs.  (Dkt. No. 16, p. 5).  The law concerning the taxation of livestock sold at livestock markets is found in Title 63 of the Idaho Code which the Government has also cited in their brief and pointed out that it too does not apply to dogs.  (Dkt. No. 16, p. 6).

are subject to being cleared up by resort to the intention of the parties as gathered from the deed, from the circumstances attending and leading up to its execution, from the subject matter, and from the situation of the parties at the time." Id. (citations omitted).

The easement terms in question here are unambiguous. Clause 2(c)'s term "general crop and livestock farming" cannot be reasonably interpreted to include dog breeding, boarding, and training. Regardless of how broadly one defines livestock farming, the Parks' activities do not fall within its terms. The Idaho Supreme Court has acknowledges as much in Partello v. Stipa, 768 P.2d 785, 786 (Idaho 1989) where it held that the general nature of the business of raising and sale of hunting dogs did not fall within the agricultural exception to the worker's compensation laws because such business was not within the traditional definition of agriculture. Id. at 786-87 ("the business of breeding and selling hunting dogs is not typical of an ordinary farmer, or for that matter in any way related to agricultural purposes..., the type of dogs in question here are not raised on a farm, are not used in the production or harvesting of crops, are not fed crops produced on a farm, albeit it is admitted that dogs used for the purpose of guarding or herding farm animals might present a closer question."); see also Meader v. Unemployment Compensation Division, 136 P.2d 984 (Idaho 1943) ("There it was argued that the term 'livestock' should be applied in the broadest sense of raising and production of livestock; in that case the production of fish. In that opinion the Court conceded that if the term 'livestock' were to be construed in its generic sense, it would include the propagation and rearing of all domestic animals, including domestic trout. However, the Court said, 'But it is equally clear that the legislature did not use the term in its generic sense, so as to include the raising of all domestic animals, ....'"). The Government's citation to Idaho case law and Idaho statutes referencing livestock and similar regulations, which do not appear to include domestic dogs, further yield support for its interpretation. The Parks argument that these cases and statutes are limited to their particular legislative schemes or area of regulation ignores the last words of Clause 2(c) which references "applicable State and local regulations." Though the cases and statutes are not dispositive

MEMORANDUM  ORDER - Page 6
06ORDERS\Park_SJ.WPD

of the question here, the Court concludes that they provide persuasive support for the Government's interpretation of the easement.[3]

Moreover, the term "commercial activity" in Clause 2(a) of the easement clearly encompasses the Parks' dog kennel operation and prohibits such activity. The Parks are advertising their services and holding themselves out to be a commercial kennel operation conducted for the purpose of making money. There is no dispute that such activities are conducted outside their residential dwelling. Accordingly, the Parks are in violation of Clause 2(a).

The Court also agrees with the Government that Clause 2(c) is not an "exception" to Clause 2(a), as the Parks argue, but instead the two clauses address distinct topics: "commercial activities" and "general crop and livestock farming and for limited residential development consistent with applicable State and local regulations." While the clauses apply to distinct topics, they are consistent in that they allow landowners the right to certain limited uses of their land as it has historically been used.

Therefore, when viewing the evidence in this case in the light most favorable to the Parks, the Court finds as a matter of law that the Parks use of their property is in violation of the terms of the easement. The Parks' operation is a commercial activity and it is not a use falling within Clause 2(c). Therefore, the Court grants the United States' motion for summary judgment and denies the Parks' motion for summary judgment.

III.   Purpose of the Easement:

The easement's stated purpose is to "protect the scenic, recreational, geological, fish and wildlife, historic, cultural, and other similar values" of the wild and scenic rivers area. (Dkt. No. 16, Att. A). The Parks assert that their use of the land is consistent with this purpose. Moreover, they claim their activities are an improvement of the property which was previously overused by horses and cattle. The United States generally disputes the Parks' assertions regarding the purpose

---

[3] Because the Court has determined that the easement is unambiguous the Court recognizes that the intention of the parties is to be ascertained from the document itself without the use of extrinsic evidence. The reference to the case law and statutes is appropriate here in light of the easement's express reference to such regulations in Clause 2(c).

and intent of the parties when the easement was entered in to and the argument that their dog kennel operation reduces the burden on the land or is an improvement to the land.

Though the express purpose of the easement is not irrelevant, it does not resolve the legal question presented in this case. Whether a particular activity or improvement is desirable, scenic, and consistent with the values of the wild and scenic nature of the area are subjective determinations and questions of fact. While the Parks' may have indeed improved the appearance of the land, the issue here goes to whether their use of the land complies with the terms of the easement. As the Court has determined above, their use violates the easement and whether or not the Parks have subjectively "improved" the property does not eliminate their violations.

## ORDER

Based on the foregoing and being fully advised in the premises, the Court **HEREBY ORDERS** that Plaintiffs' Motion for Summary Judgment (Dkt. No. 17) is **GRANTED** and that Defendant's Motion for Summary Judgment (Dkt. No. 16) is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendants shall cease their activities conducted in violation of the terms of the easement as determined above and shall hereafter comply with all terms of the easement.

**IT IS FURTHER ORDERED** that counsel for Plaintiff submit a proposed judgment consistent with this Memorandum Order on or before September 29, 2006.

DATED: **September 15, 2006**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM  ORDER - Page 8
06ORDERS\Park_SJ.WPD